is number 20-12385 Karen Kallen-Zurry versus the United States. Mr. Shrevenick. Good morning, Mr. Shrevenick. Good morning, Judge, and may it please the court. Hope is not a strategy. Hope that your co-counsel representing a co-defendant will present an hoping that the jury will ignore the government's case despite the availability of favorable testimony from half a dozen fact witnesses and expert. That is simply not an objectively reasonable strategy. Are you arguing that the district court's finding that there was an objectively reasonable strategy here or a strategy decision is clearly erroneous or that that is a legal conclusion the district court made that that is an erroneous legal conclusion? It's both in this case because there is no objectively reasonable basis to determine as this trial lawyer did that witnesses who were available to testify an expert and half a dozen fact witnesses who that lawyer deemed to be assets to the defense should the defendant testify last suddenly became potential liabilities when the lawyer decided to put the defendant on the for the defense was the same whether those witnesses testified before or after the defendant. I want to go back to my question because the district court or the here the magistrate judge as accepted by the district court heard exactly that testimony, heard the explanation for why the lawyer did it. I understand that you disagree with that explanation, but I guess my question is that is the acceptance of that explanation as a strategic decision a factual finding for which we need to review it for clearance? Well, no because it has to be objectively reasonable and so it's in the words I think of Judge Karnes in the Hammond case it doesn't really matter what the lawyer says was the reason why he made the election to forego all of the witnesses. It has to be objectively reasonable irrespective of the perhaps protectural reasons why a lawyer decided to abandon putting on defense witnesses. Your point is that if the lawyer called it strategic and the judge called it strategic you still have to go beyond that and figure out whether as an objective matter the strategic decision was constitutionally reasonable given the way Strickland plays out. That's exactly right and the 11th circuit has so said in the Hammond opinion that labeling it a strategy doesn't relieve the court of the obligation to evaluate whether objectively reasonably was it a strategic decision. Let's put aside the strategic decision for a moment. So as I understand Strickland there is a presumption that counsel acted constitutionally and that presumption needs to be rebutted by the defendant who is challenging the deficiency prong. We have case law which suggests that a very experienced counsel gets a stronger presumption so that we start with a presumption against you and you need to overcome that. Tell me if I'm wrong on that tell me that but that's that's how I understand the law. There's a few ways that I see that you can do that. Let me think three big ones. One is expert testimony. You have an opinion of an experienced attorney like yourself who testifies and says I've reviewed all this and no reasonable attorney would have made this call. That's one way. Another way is objective standards often ABA standards and things like that that are contradicted by the decision. And a third way seems to be an analogy to case law where we've already said it seems to me in your brief you go with number three. Is that a fair? I think that is fair there was no expert testimony offered although we did make the pitch in the court of appeals that the trial lawyer's claim of calling no witnesses after the defendant testifies is not supported by any empirical studies. It's not supported by ABA standards, CLE materials, case law. The not supported doesn't help you because you need to overcome the presumption that it's strongly that an experienced attorney has a strong presumption that they acted effectively. That may be so but if the lawyer said that for astrological reasons he doesn't call witnesses who are born in the month of March I don't think we would need to call an expert to testify that that is beyond the pale. So I think that's where you get to case law. It seems to me that that the case on I've read all the cases you rely on in your brief. It seems to me that that all or just about all are what I'll call no witness cases. And here it doesn't seem to this case doesn't fall into either of those. In other words I think we all agree and I think even you agree that the attorney conducted a very good investigation. He had witnesses lined up. He knew what they were going to say. He did his job at least reasonably and so it's not a no investigation case and it's not a no witness case because your client testified and laid out the defense. Now whether that could have been supported or not is a separate story but it's not they didn't put on any defense at all. They put on a defense so where do we fall on that spectrum? Okay so no amount of investigation is worth a hoot if it's not brought before the jury for the jury to evaluate. But the Supreme Court has said that in order to make the call the strategic call of what to do you have to know the information. Here I think we have to agree that he that the counsel at least knew what he was doing. Now whether again that decision was effective or not is a separate call but. Can I ask a question because this goes to Judge Luck's question which is and I think it's part of the questions that we have here which is who does it belong to the decision to call witnesses? We haven't answered that question. Does it belong to the client or does it belong to trial counsel? So that is an open question in the Eleventh Circuit. We did find the one case the Burton case that labels it as an open question and it does cite an Alabama case that finds that to be a defendant's right to decide to put on and there are cases that do allow the lawyer some latitude to decide which among the several witnesses to call for example to avoid cumulative witnesses. But I know of no case that allows the lawyer to abandon all of the witnesses that are available for the defense without some suggestion that the defendant has. But there's no evidence in the record or your your client didn't at the time that the trial was going on ask or tell the district court judge that she was unhappy with the fact that witnesses were not going to be called. You are correct. There's nothing in the record showing that the client participated in court to reveal her position on that issue but the evidence is beyond dispute that the expectation up until the moment the government rested was that those witnesses would be testifying. She paid for the expert to be available. The expert had evaluated a dozen or two patient files. The expert was outside the courtroom door and the client was expecting the expert would testify. Half a dozen fact witnesses were in the courthouse. Mr. trial counsel admitted that they were either in the parking lot or outside the courtroom prepared to testify. So to answer your question Judge Lagoa, this defendant expected there was going to be a fulsome defense and we needed a fulsome defense because the court may was attacked when she testified by the false testimony of a federal agent who claimed that she had failed to produce evidence during the grand jury investigation phase. Only afterward did the government admit the attack on her credibility was a false attack. We've already called that like pick you or or incidental. I forget the thank you. I that was the one I remembered. I'm glad I was right about that but we've already said that that small ball to use the baseball analogy. It was small ball because in the context of the trial that the court of appeals was looking at there was nothing to counterbalance her testimony. The defense had not put on all the witnesses that were available so the record available to the court of appeals comparing her credibility against all the government witnesses with no corroboration offered in her defense. None of the fact witnesses to support her. The expert witness not available to support her because and here's a really important point. The expert witness the judge ruled was not going to be permitted to testify about two of the substantive counts of the offense because counsel had failed to comply with rule 16. And so what we have here is a lawyer who failed to comply with rule 16 which was going to hamstring the presentation of the expert testimony. He then testified that he hoped that co-counsel would present that expert. Co-counsel hadn't complied with rule 16. In fact co-counsel had never even spoken to the expert. So the the fact of this case is that this lawyer. Can I go through the timeline for a second on that point? As I understand it the decision was made not to call the witnesses before this issue of the files came up. True or not true? True except the lawyer hoped that co-counsel would call the expert. There's no doubt about that but true that the decision that counsel made not to call. True that he wanted that witness to co-counsel at the time that he rested. True or not true that the decision to not call witnesses was made before the court engaged in the issue of the rule 16 violation? True. I'll give you some extra time to answer this question Mr. Strebnick. For me it's a difficult one. Tell me about the prejudice analysis because the magistrate judge also concluded that even if Mr. Pisano had rendered ineffective assistance that Ms. Calanzuri could not show strickland prejudice. So tell me about that. Well this court in in several cases and in the other circuits all agree that presenting favorable evidence to corroborate a defendant's testimony is effective assistance of counsel. But failure to present corroboration constitutes ineffective assistance of counsel. And here with Ms. Calanzuri having testified in her defense and then being attacked unfairly by false testimony of a case agent made it paramount paramount that her testimony be corroborated by the fact witnesses and the expert. And the magistrate's decision to effectively weigh the credibility of those witnesses herself at a hearing under 2255 with all respect that was the jury's job to weigh the credibility and weigh the the comparative value of the defense witnesses versus all of the government witnesses. I take the point that ultimate determinations like that are for a jury but when a court is doing a prejudice analysis it has no choice but to sort of look in a crystal ball and create a hypothetical universe of how this evidence that should have been presented would have impacted the trial that went through right? So agreed. We're stuck we're stuck with that and so the judge is able to at least look at the strength of the evidence that should have been presented right? Yes. And decide how that fits into the mosaic so tell me about that. Right but the mosaic should include a world as we described in our brief what I referred to as the game changer where the trial would look something much different than it looked like. It would look where the defendant is not unfairly accused of obstructing justice where the case agent is exposed in the courtroom for having lied about the matter and then the defendant testifies supported by six fact witnesses an expert witness who would have said that the government's lead medical witness Goomer who claimed that 99 of the patients didn't need the services rendered. That testimony which was critical to the government's case featured in the closing argument would have been rebutted directly by Dr. Danziger but for as Judge Luck points out there had not been a rule 16 violation but for the trial lawyer's failure to present that evidence and then to make matters worse the magistrate said that for example the doctor's sample size was too small that was the trial lawyer's decision on how to prepare the expert to testify and the expert testified of every single patient file he looked at there was medical necessity. A jury should have heard that evidence. Jordan may I ask another question? Let me ask you a question. This goes to the certificate of appealability. Let's assume that the Baker Hostiler invoices are included in the certificate of appealability. What would the invoices have have done in terms of the the evidence? It would have supported her good client's good faith defense that she was relying on a significant law firm to guide her through the process. That's effectively the point of the Baker Hostiler. And who would have presented that evidence of the invoices? I don't think there was any dispute of authenticity. Thank you your honors. All right thank you. You've saved your full time for rebuttal Mr. Srednick. Mr. Sanders. May it please the court. Jeremy Sanders of the criminal division on behalf of the United States. Your honors, three different panels of this court have already considered Ms. Calanzuri's numerous challenges to her conviction for her role in spearheading a 67 million dollar health care fraud and kickback conspiracy. And each time, whether in the context of a direct appeal or an appeal of the denial of her repeated requests for a new trial, this court denied relief explicitly recognizing quote strong evidence of Karen Calanzuri's guilt presented at trial. Now Ms. Calanzuri returns to this court a fourth time seeking to vacate her conviction and sentence based on a claim that her experienced trial counsel Michael Pisano rendered ineffective assistance when he made the strategic and informed decision not to call additional witnesses after at trial after Ms. Calanzuri testified in her own defense. I mean we at least I get all of that and I understand the presumption that counsel is afforded under Strickland. But the question ultimately becomes I think whether or not that strategic decision was permissible right constitutionally permissible given the floor that the Supreme Court has set in Strickland and and its progeny right. So for example I'll give you an example just to sort of the question. Defendant gets on the stand and puts on an alibi defense through her own testimony. You've got four other witnesses who corroborate the alibi but you don't put any of them on. Although the decision may have been strategic some court's going to figure out whether or not it was objectively reasonable to not put on those alibi witnesses and then you know of course there might have been good reasons to do it like listen I think they're lying or they've got these other problems or they can be impeached on these grounds or they could only corroborate the alibi for specific limited periods of time but but you have to go through that analysis right. So the question is whether or not the district court got it right in thinking that this strategic decision was reasonable under Strickland. I agree with everything you've said Judge Jordan. I think there could be situations where not calling additional witnesses wouldn't would amount to deficient performance because they weren't. But why in this case would let's say the Baker Hot Cellar invoices where it's agreed to it's it that the documents are admissible. Why would that not be objectively reasonable? An inference can be made that it's not objectively reasonable not to include those and to present those as evidence in the in the in the trial when it could corroborate her decision that she was following advice of counsel. Well I think and and I'm aware Judge Ligoa you know that our argument that that I understand let's assume that it's included in the COA. I think it's because it would be cumulative of her own testimony about the fact there was no dispute that she had engaged counsel on certain issues related to the payment of referrals and whether they would be legal. It was that was not an issue was whether she followed the advice of counsel and in her own testimony she acknowledged kickbacks referrals are my business. I mean she acknowledged that was she was paying these payments to to the patient recruiters. But I think to get back to Judge Jordan's question the magistrate judge and by connection the district court did that analysis. I mean this was not a case where defense counsel did not appear or fell on his side. I didn't really think about that or I didn't investigate. Mr. Pisano gave concrete reasons why he didn't call each of these individual witnesses that Ms. Calanzari put on as part of the 2255 hearing and each of those the magistrate judge found to be a credible sound strategic decision and I'm happy to go through any of those. But he also I think you're right about that but he also explained and I haven't read the entire evidentiary hearing transcript so I could be partly mistaken about this but he also testified that there was something that sort of changed the dynamic for the defense and that was the timing of when the government was going to finish its case. Judge Martinez saying that he was going to continue the trial immediately after they were switching over the defense case and the thought by Mr. Pisano that the government having concentrated its fire on its own witnesses in its own case might not quite be ready to cross-examine Ms. Calanzari if he got her on and got her off quickly. And I think that as the way the trial proved out that strategy proved to be not only correct but effective. Ms. Calanzari was only on the stand for one afternoon and Mr. Pisano and the record does show and this is at docket entry 347 on pages 3069, 3070, and 3177 of the transcript that the government announced that it was not aware that Ms. Calanzari until the night before was going to take the stand and the prosecutor asked for additional time at lunch and to advance the afternoon break to prepare for her cross examination. And I would also note that before you keep going how did that play out in terms of timing over you said she testified for what for an hour? I believe it was after the lunch break when she testified and then I don't know the precise moment of the day when they were over but it was when did her cross-examination end? I think it was somewhere on 4 30 don't I don't want to be precise about that it was before sort of the end of the normal court day but it was late in the afternoon. And it didn't continue into the next Monday? No indeed the the the government finished its excuse me cross-examination so is exactly as Mr. Pisano strategized he was able to limit the direct which would then limit the cross and the government would not have the weekend and the additional day to prepare to review additional exhibits and to expand its cross-examination and I would note if you just a measure of mere pages the the the number of pages of Ms. Kalinzuri's cross-examination is about I think 51 53 and Ms. Miller her co-defendant was crossed for about 93 pages so I mean that's just. But if I remember the record correctly and correct me if I'm wrong I thought that everyone understood that Friday there was not going to be trial. But that's the last trial day of the week so Mr. Pisano's decision was I can get her on the stand. No I understand that but I mean government lawyer your your your case is ending you know that the defense has to go they're next they're going to proceed and I mean they'll do some motions maybe perhaps but other than that you have to be prepared for something. Except there was a list of several but also there's a presumption that the government lawyer is prepared. I mean I can't presume I mean I have to be prepared if when I was a prosecutor to anybody could be because Mr. Shrevenick could present anybody as a witness and you had to be prepared to go. That's certainly correct but I I think the point is Mr. Pisano seized an opportunity to say you know what if I can get my most important witness on and off with a limited amount of cross-examination if she could quote as to use the baseball analogy which has been overused here hit hit it out of the park then that's the best strategy for my case and these are decisions that counsel make all the time they have to be. Let's give let's give Mr. Pisano his due and say that the timing worked out exactly as he thought. The trial's not over. It doesn't prevent the lawyer from saying oof that that decision worked out exactly as I thought good for me. Now the trial isn't over and I'm gonna tell Judge Martinez that I've got a couple maybe not all five or six witnesses but I've got a couple of witnesses to put on when we start up next week again and so I understand the point that he made a strategic decision. I understand the point that in some respects it played out in timing terms as he thought right but that's not the end. So so you have to go to the point you were going to get to when I interrupted you which is why not call those other witnesses. Correct and and so I think you have the weekend now you have Friday Saturday and Sunday which is a godsend. Certainly to have a free trial day I agree with you on that one. So I think the point is number one with respect to listen I would have put her on if Kalinzuri if I hadn't made the c-chains decision to put Kalinzuri on first but she was of limited utility. She didn't have first-hand knowledge of things like whether the patient files were accurate and so each of these witnesses presumably even over the weekend Mr. Pisano thought about is the marginal utility that I may get from putting them on the the risk that their cross could be damaging and that they might undermine things that Ms. Kalinzuri said. Now I note some of the reason why you usually have the defendant testify last is because under the rule of witnesses she is there to hear all the testimony of everyone else and she can conform her testimony to sort of fit that that story. That is not the case for all these other witnesses so they could have come in and in cross or even on direct said something that undermined Ms. Kalinzuri's testimony and that's a risk that counsel should be aware of in in his decision whether to call these additional witnesses but beyond all those sort of strategic timing. Was there testimony that once the defendant does testify in other words once we accept the good strategic decision to put the defendant on once that happens the trial becomes about whether the jury believes the defendant or not. Was there testimony about that at the at the hearing at the uh at the the 2255 hearing? I think certainly Mr. Pisano testified about the importance of um the defendant's credibility and this court recognized that the good faith defense it was all about the credibility but I don't think there was sort of testimony specifically as to that once the defendant testifies the entire trial becomes about whether the jury believes the defendant or not that wasn't in the record. I apologize if it could be but I think that's sort of not a controversial proposition. Isn't that the point though? Yeah. Agreed it's not a controversial proposition but the the point being that once that happens the other witnesses don't really matter as much in other words once the decision is made to open that box the whole trial becomes about that regardless of if 15 people swear on a stack of bibles saying that everything she said was true or not true. That's certainly true although I would note Judge Jordan did have an example of perhaps you would need additional corroborating if it was an alibi or something like that but I mean it was all going to be about the testimony of the defendants both Mr. Coloma and Ms. Miller also testified in their defense. What was the situation with I forget the names too many names I forget the name of the gentleman who had invoked his fifth amendment privilege Melvin Hunter in in the grand jury proceedings and according to the magistrate judge's report had also told Mr. Pisano during discussions that he would do the same thing or wouldn't testify freely if called at the at the trial. What what did he my question is was there any testimony or evidence presented at the evidentiary hearing before the magistrate judge from him or from his lawyer about the supposed change in perspective about what he would have done what he wouldn't have done had he been called? So Mr. Hunter did testify and Mr. Pisano testified slight correction uh Judge Jordan it wasn't Mr. Pisano didn't learn from Mr. Hunter directly but from his counsel and his counsel said he intended to know of course because you wouldn't right you know a lawyer a lawyer is not going to reach out through the lawyer without the lawyer to someone who's represented but yes he learned who is I think Mr. Pisano excuse me Mr. Hunter falls in a different category than all of these other witnesses because they were not questions about how valuable they may have been or their risks on cross for Mr. Hunter he was simply not going to be available to testify. That's why I'm asking you about him because I think he he's different in kind and degree than the others are. He testified that he that he would have disregarded his attorney's advice and taken the stand um in defense of Ms. Callan sorry but the magistrate judge found that to be inconsistent and also found his testimony to be biased and right she found him not credible but I mean is that really for was that really a valid decision because she found that he was not credible because he had been prosecuted and acquitted in a parallel case sure that's exactly that is the precisely what we ask a magistrate judge to do in an evidentiary hearing is to evaluate whether Mr. Hunter's uh statement that oh no I absolutely would have disregarded my attorney's advice and testified for Ms. Callan whether that was fabricated or not as particularly now after he had no risk of uh further uh prosecution under the double jeopardy clause and the man and Judge Ataza Reyes simply said this defendant this would just excuse me but if you're the government you could impeach him or you could say don't you know you were prosecuted and you were acquitted and you don't like the government correct Mr. Hunter right he had testified at trial uh his trial took place before after he he he he was still in his own defense at his own trial after and was acquitted no no no his trial Mr. Hunter's trial was before when the sequencing was Ms. Callan's trial Mr. Hunter's trial the 2255 hearing right so he was at the time of Ms. Callan Zuri's trial which is more to your point he was still under jeopardy correct which is precisely it would have been a different situation had his trial gone forward first been acquitted not under jeopardy anymore and then his testimony that right I mean I would have testified that would have made more sense certainly I mean believable too perhaps but that's it precisely the the magistrate judge concluded that his testimony was inconsistent with the factual record I see that my time is up I'm happy to continue to answer additional questions but if I could just briefly sum up sure Mr. Shrebnik has claimed that there would have been a game changer had Ms. Callan Zuri been able to present these witnesses but the real answer is as this court has concluded multiple times the evidence against her was strong the reason Karen Callan Zuri was convicted was because of the evidence of her overwhelming involvement in a fraudulent scheme we ask this court to affirm the district court's denial of relief thank you all right thank you very much Judge Jordan Hunter is an important factor in this case because as everybody now knows he testified in his own defense and he was acquitted and he's the person who had the patient register on his computer I know but it's one thing again this is not determinative but it's one thing to testify at your own trial it's another thing to expose yourself to cross-examination which might be used against you in a later trial if you're testifying at the trial of someone else you know for her benefit agreed those are not exactly the same thing I totally agree but on this record what trial counsel did was rely on the statement of a lawyer for Hunter claiming Hunter would invoke the fifth but never brought Mr. Hunter before the court before Judge Martinez to determine whether in fact he would or wouldn't invoke the fifth Hunter testified before the magistrate judge he would have testified at Callan Zuri's trial in fact as we now know he testified at his own and was acquitted so how can his credibility just be jettisoned aside when the man who was in possession of the register patient register that Callan Zuri was accused of obstructing by not revealing this is the whole case the Picayune matter this was how the government was successful in attacking Miss Callan Zuri's credibility and that's why it only took can we only overrule I mean I understand the issue of the strategic decision but with regard to of the magistrate judge that we can only overturn for clear and convincing error how can we say it's clear and convincing where there is least testimony that counsel was told that he was never going to take Mr. Hunter was never going to take the stand I think it's incumbent upon the lawyer to bring that witness with a subpoena to the courthouse and have him either invoke or that may be great that may be good lawyering and it may be what what should have happened but I'm talking about the magistrate judge's credibility finding which we're stuck with oh I don't know that we're really stuck with it since Mr. Hunter was acquitted and his credibility was accepted by 12 jurors I don't know how the magistrate can effectively say well she doesn't believe that anybody would have testified under those circumstances that's what she basically said as Judge Jordan points out most lawyers would advise their client not to testify it's not as though the magistrate looked at Mr. Hunter in the eye and said his eyes are crossing and therefore I find him incredible she just couldn't imagine a scenario where someone would give up their fifth amendment right and that has nothing to do with his demeanor or anything like that in my view but then let's talk about the cross-examination of Kalin Zuri which only took a few hours because the government in the transcript attacked her and said ma'am it was found on your computer the patient register that was actually in Hunter's computer and then he says you knew this document was on your computer correct she says no I did not and then in closing argument the government attacks her for being a essentially not prejudicial the lawyer's failure to take command of those facts present an expert witness to contradict the testimony of the government's expert half a dozen witnesses who would have said I worked at this place this was not one flew over the cuckoo's nest because as it stood it was the defendant all alone her word against a federal agent who unfairly attacked her credibility and not one fact witness to corroborate her that is not the hallmark of a fair trial allows her to put on fact witnesses expert witnesses to counter the false testimony of the agent and the biased testimony of the government witnesses that did not happen in this case at a retrial let's imagine what a retrial would look like now with the case agent having to eat crow for having lied at the first trial for those other witnesses to come in and stand up and say I worked at Hollywood Pavilion I stand by the work I did the jury never heard that and let's and forgive me I know I'm running out of time passano promised the jury in an opening statement you will hear for sure that there were real patients receiving real services he didn't call a single witness to corroborate that he promised that to the jury a jury needs to hear that miss kalin zuri is entitled to a trial where the jury hears all of the witnesses and then let them make up their minds the court has no further questions we submit right mr shreve nick mr sanders thank you both very much we appreciate it thank you